IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY ANN CIARLONE, IRENE LORA, ORAZIO GERBINO and ANNE BAEZ,<br>　　　　　　　　　　　Plaintiffs,<br>　v.<br>CITY OF READING, THOMAS MCMAHON, RYAN HOTTENSTINE, BRAD REINHART, JATINDER SINGH KHOKAR, and JAMES ORRS,<br>　　　　　　　　　　　Defendants. | CIVIL ACTION<br><br>NO. 09-0310 |

HENRY S. PERKIN　　　　　　　　　　　　　　　　　　　　　OCTOBER   28 , 2009
UNITED STATES MAGISTRATE JUDGE

## MEMORANDUM

Currently in this civil rights action is the Motion to Quash a Subpoena and for Protective Order filed on behalf of the Honorable Wallace S. Scott, a Berks County Pennsylvania Magisterial District Judge.  For the reasons stated below, the Motion to Quash and Motion for Protective Order will be granted.

**I.　　FACTS.**[1]

Mary Ann Ciarlone ("Mrs. Ciarlone"), a Plaintiff in the instant case, owns multi-unit residential rental properties in Reading, Pennsylvania.  First Am. Compl., ¶ 44.  Mrs. Ciarlone lives in one unit of an eight-unit residential apartment building located on North Fifth Street.  Id., ¶ 61. On October 23, 2006, a City of Reading Property Maintenance Code was amended by an ordinance which requires tri-ennial inspections of all properties, residential and

---

[1] These facts are taken from Plaintiffs' First Amended Complaint, the Motion to Quash and for Protective Order, the Response and Supplemental Response to the Motion, and counsels' statements during the September 30, 2009 hearing.

commercial, rental and owner occupied, to be performed by the City.  Id., ¶¶ 34, 35.  The Office of Code Services served a notice by regular mail to Mrs. Ciarlone as owner of the North Fifth Street property advising her that an inspection was scheduled for April 2, 2007.  Id., ¶ 60.

On April 2, 2007, Mrs. Ciarlone met Code Enforcement Officer Joseph Esterly outside the North Fifth Street property with a video recording device when he appeared for the inspection.  Id., ¶¶ 63-65.  Mrs. Ciarlone told Mr. Esterly to obtain a search warrant to conduct his inspection.  Id., ¶¶ 66.  Mr. Esterly left and returned an hour later with an unidentified woman and stated to Mrs. Ciarlone, "I just want to talk to you; I just want to talk to you."  Id., ¶¶ 67-68.  As Mr. Esterly and the unidentified woman approached Mrs. Ciarlone, the woman said "Yeah, that's her!"  Id., ¶ 68.  Mr. Esterly and the unidentified woman then left the premises.  Id., ¶ 69.

Mr. Esterly made application at the office of Magisterial District Judge Deborah Lachina for a warrant to search the North Fifth Street property.  Id., ¶ 70.  Judge Lachina "refused to either approve or deny the [a]pplication."[2]  Id., ¶¶ 70-71.  Later on April 2, 2007, Mr. Esterly and Defendant Reinhart went to Magisterial District Judge Scott's court for purposes of making application for issuance of a search warrant.  Id., ¶¶ 72-73.  Judge Scott denied the application for the search warrant after allegedly overhearing Defendant Reinhart state to Mr. Esterly "I can't wait to get back at that bitch!"[3]  Id., ¶¶ 74-75.

Approximately eighteen months later on October 7, 2008, Defendant James Orrs, a Code Enforcement Officer, attempted to conduct an inspection of Mrs. Ciarlone's three-unit

---

[2]Defendants' counsel related during the September 30, 2009 hearing that Judge Lachina did not want to get involved with the application because she knows Mrs. Ciarlone and told Mr. Esterly and Defendant Reinhart to take it to another District Judge.

[3]Plaintiffs' counsel represented at the September 30, 2009 hearing that Defendant Reinhart testified at a recent deposition that Judge Scott "held" the warrant, i.e., did not make a decision on the warrant application.

residential rental property located on Oley Street in Reading. Id., ¶ 79. Mrs. Ciarlone refused to allow Defendant Orrs access to the Oley Street property because proper notice of the search was not provided to her and her tenants.[4] Id., ¶¶ 77, 80. On October 9, 2008, Defendant Orrs submitted an Application for Search Warrant and Affidavit of Probable Cause to Search to Magisterial District Judge Thomas X. Xavios. Id., ¶ 88. Judge Xavios issued the administrative search warrant on October 9, 2008. Id., ¶ 89. On October 10, 2008, Defendants Orrs and Reinhart were met at the Oley Street property by Mrs. Ciarlone and they presented the search warrant to Mrs. Ciarlone. Id., ¶¶ 90-91. Mrs. Ciarlone informed them that she would not participate in the search of the subject property.[5] Id., ¶ 91. Defendant Reinhart used a sledge hammer to gain access to the exterior security door and interior privacy doors and broke an exterior glass to gain access to the exterior lock. Id., ¶¶ 93-94, 97. Defendants Reinhart and Orrs then conducted the administrative search pursuant to the warrant.[6]

Based upon the October 10, 2008 administrative search, Plaintiffs filed the instant civil rights action. In the First Amended Complaint, Plaintiffs allege that the search of the Oley Street apartment building was performed to harass and intimidate Mrs. Ciarlone and in purposeful disregard of the constitutional rights of Mrs. Ciarlone and the Tenant Plaintiffs. In support of their claims, Plaintiffs point to the alleged public comment made by Defendant

---

[4] In addition to Mrs. Ciarlone, the three tenants in the Oley Street property are the other named Plaintiffs in this action. They are Irene Lora, Orazio Gerbino and Anne Baez ("the Tenant Plaintiffs").

[5] Plaintiffs characterize the search as illegal because they contend that the Tenant Plaintiffs did not receive proper notice of the search originally scheduled for October 7, 2008. First Am. Compl., ¶ 82.

[6] None of the Tenant Plaintiffs were present on October 10, 2008, when the inspection was performed in Mrs. Ciarlone's presence by Defendants Orrs and Reinhart pursuant to the warrant issued by Judge Xavios. First Am. Compl., ¶ 98.

Reinhart concerning his intention to execute the search warrant on the North Fifth Street property in order to "get back at" Mrs. Ciarlone.  According to Plaintiffs, this statement is directly relevant to the motive and purpose of Defendants Reinhart and Orrs in utilizing a sledge hammer to conduct the Oley Street property inspection.  In addition, Plaintiffs aver that Defendants "harbor great personal animosity" towards Mrs. Ciarlone, and Defendants sought to conduct inspections of Mrs. Ciarlone's rental properties in order to harass her.  Id., ¶¶ 57-69.

To obtain discovery regarding Defendant Reinhart's alleged admission, Plaintiffs' counsel sent Judge Scott a July 23, 2009 transmittal letter with a subpoena and an attachment to the subpoena notifying Judge Scott that his deposition was scheduled for August 31, 2009.  Plaintiffs' counsel invited Judge Scott to contact him to arrange for a convenient time and place to conduct the deposition.  The attachment to the subpoena limited the scope of the subpoena to:

> the *public comments* made by City of Reading Codes Administrator Brad Reinhart while in your presence on April 2, 2007.  These public comments were made when Brad Reinhart accompanied Code Inspector Esterly to submit an application for the issuance of a warrant to search the real property of Mary Ann Ciarlone located at [] North 5th Street property.  All deposition questions will concern public comments made by Brad Reinhart - while court was *not in session* and *not during a deliberative hearing or conference* - on April 2, 2007.

Mot. to Quash, Ex. A, p. 3.  On August 4, 2009, Michael Daley, Esquire, legal counsel to the Court Administrator of Pennsylvania, wrote to Plaintiffs' counsel requesting that Plaintiffs' counsel contact him to discuss the subpoena served upon Judge Scott and indicating that if Plaintiffs intended to proceed with the subpoena, a motion to quash and for protective order would be filed.  On August 6, 2009, Plaintiffs' counsel and Mr. Daley discussed the subpoena but could not come to an agreement.

On August 9, 2009, the Administrative Office of Pennsylvania Courts ("AOPC") filed the instant Motion to Quash and for a Protective Order on behalf of Judge Scott on the basis that the search warrant application was a judicial proceeding involving Judge Scott's judicial capacity and statements made during the application process were not discoverable.  Plaintiffs' counsel and Judge Scott's counsel conferred again to discuss ways to protect the judiciary and minimize inconvenience to Judge Scott.  Plaintiffs proposed conducting Judge Scott's deposition by written interrogatories at a location and time convenient to the Judge, and limiting the number of written questions to a mutually agreeable number.  On August 27, 2009, Plaintiffs filed their Response to the Motion to Quash and for a Protective Order.  On August 31, 2009, the Honorable Lawrence F. Stengel referred this Motion to the undersigned for disposition, and a hearing on the Motion was held on September 30, 2009.  On October 12, 2009, Plaintiffs filed a Supplemental Response to the Motion, stating that Judge Scott waived the deliberative process privilege by giving an on-the-record interview to a reporter from The Reading Eagle newspaper and making the following statement that was included in the October 12, 2009 article:

> But Scott said Reinhart was on a vendetta when he came to Scott's office seeking a search warrant to inspect another Ciarlone-owned property on North Fifth Street in April 2007.  Scott said Reinhart stated that he wanted to "get" Ciarlone.  "I said that's not a reason to do a search warrant," Scott said.  He said Reinhart angrily got up and walked out.

Pls.' Supp. Resp., p. 2.  A Response to the Supplemental Response was filed on October 16, 2009.

**II.     STANDARD.**

The Federal Rules of Civil Procedure that underlie a Motion to Quash or Motion

For Protective Order and a Motion to Compel are Rules 26 (c), 37, and 45.  Rule 26 (c) states, in pertinent part, the following:

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]

Fed. R. Civ. P. 26(c) .  Rule 37 addresses the failure to make disclosures, cooperating in discovery, and sanctions and provides that "[a] party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery[.]"  Fed. R. Civ. P. 37(a).  Finally, Rule 45 addresses subpoenas in general, namely, their issuance, service, the protection of persons subject to subpoenas, duties in responding to subpoenas, and contempt.  Rule 45 authorizes a district court to quash a subpoena if it subjects a person to an undue burden, fails to allow for a reasonable time for compliance, or requires disclosure of confidential information.  Fed. R. Civ. P. 45(c)(3); see generally Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enter., 160 F.R.D. 70, 72 (E.D. Pa. 1995) ; Small v. Provident Life & Accident Ins. Co., No. 98-2934, 1999 WL 1128945, at *1 (E.D. Pa. Dec. 9, 1999); Barnes Found. v. Township of Lower Merion, No. 96-372, 1997 WL 169442, at *4 (E.D. Pa. Apr. 7, 1997).

III.    **DISCUSSION.**

Judge Scott moves to quash his deposition because the search warrant application was a judicial proceeding involving his judicial capacity.  Plaintiffs contend, in response and

without legal support, that the communication at issue is not "deliberative" in nature and the deliberative process privilege is not applicable to admissions made by a party opponent which were inadvertently overheard by a magisterial district judge.  According to Plaintiffs, the scope of the subpoena was specifically limited to public comments made by Brad Reinhart while court was not in session and not during a deliberative hearing or conference.  Plaintiffs also argue that Judge Scott's on-the-record interview with the reporter from The Reading Eagle operated as a waiver of the judicial process privilege.

> The decision making process of a judge is usually not a discoverable matter. United States v. Morgan, 313 U.S. 409, 422 (1941);  Grant v. Shalala, 989 F.2d 1332, 1344-45 (3d Cir. 1993).  The general rule is that a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties.  U.S. v. Roebuck, 271 F. Supp.2d 712, 718 (D.V.I. 2003)(citing U.S. v. Morgan, 313 U.S. 409, 422 (1941); Fayerweather v. Ritch, 195 U.S. 276, 306-07 (1904); Grant v. Shalala, 989 F.2d at 1344-45; Robinson v. Commissioner of Internal Revenue, 70 F.3d 34, 38 (5th Cir. 1995); United States v. Edwards, 39 F. Supp.2d 692 (M.D. La. 1999)).  "[O]nly in the most extraordinary cases, such as a strong showing of bad faith or improper behavior by a judge or quasi-judicial officer or where circumstances were such to overcome the presumption of regularity as to the acts of the decision maker, may a judge be questioned as to matters within the scope of his adjudicative duties." Id. (citing United States v. Ianniello, 740 F. Supp. 171, 178 (S.D.N.Y. 1990)(citing Citizens to Pres. Overton Park v. Volpe, 401 U.S. 402 (1971), KFC Nat'l Mgmt. Corp. v. Nat'l Labor Relations Bd., 497 F.2d 298 (2d Cir. 1974); Beverly v. United States, 468 F.2d 732, 743 (5th Cir. 1972)).  Nonetheless, "a judge

may be called to testify to relevant matters of fact that do not probe into or compromise the mental processes employed in formulating the judgment in question." Id. (citing Standard Packaging Corp. v. Curwood, Inc., 365 F.Supp. 134, 135 (N.D. Ill. 1973)).

Similar to Plaintiffs' argument in the instant case, the defendant in United States v. Roebuck argued that he was not seeking to inquire into the judge's mental impressions, but rather wished to inquire into the facts that led to the judge's recusal and his subsequent decision to withdraw his recusal in several of his cases. In support, the Roebuck defendant characterized the holding of Standard Packaging as permitting factual discovery on how a judge reached a decision, so long as his beliefs or analysis are not probed, but the Roebuck court rejected that suggestion, stating that "the court in Standard Packaging was clear that a judge may be called to testify to relevant matters of fact so long as the factually based questions do not probe into the mental processes employed in formulating the judgment in question." Roebuck, 271 F. Supp.2d at 719(citing Standard Packaging, 365 F.Supp. at 135). Accordingly, even factually-based questions may be objectionable. Id.

Although a judge is not privileged from being subpoenaed as a witness, "it is imperative when he is called to testify as to action taken in his judicial capacity, to carefully scrutinize the grounds set forth for requiring his testimony." Id. at 721(quoting United States v. Dowdy, 440 F. Supp.2d 894, 896 (W.D. W.Va. 1977)(quashing subpoena that would have required judge to appear as a witness in perjury prosecution where defendant failed to show extraordinary circumstances justifying examination of a judge's decision-making process)(quoting United States v. Valenti, 120 F.Supp. 80 (D.N.J. 1954)). In the context of any inquiry into matters involving facts revealed to a magisterial district judge, the Pennsylvania

Supreme Court has explained the general rule for the deliberative process privilege as follows:

> For the deliberative process privilege to apply, certain requirements must be met. First, the communication must have been made before the deliberative process was completed. Secondly, the communication must be deliberative in character. It must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal policy matters." Information that is purely factual, even if decision-makers used it in their deliberations[,] is usually not protected.

Leber v. Stretton, 928 A.2d 262, 268 (Pa. Super. 2007)(quoting Commonwealth v. Vartan, 733 A.2d 1258, 1264 (Pa. 1999)(citations omitted)). The Superior Court in Leber found that,

> [e]ven if [the judges] were the sole source of the information, we . . . determine that [the plaintiff's] desire to question [the judges] regarding events which occurred in the course of their judicial duty not only will take time away from their role as district judges but also necessitates delving into the thought processes they utilized in those positions. As a matter of public policy, we find this type of questioning unacceptable and hold that judicial officers are immune from testifying as to information surrounding their conduct during an official proceeding.

Id.

Plaintiffs contend that Judge Scott will not be asked information regarding his judicial decision-making. Rather, Plaintiffs argue that the subject of the proposed deposition will involve only a matter that Judge Scott "happened to witness" and as such, is permissible. Plaintiffs note that the Pennsylvania Superior Court examined when the deliberative process privilege would apply in Leber, and argue that the reasoning of the Superior Court in Leber is instructive to this case. After holding that the deliberative process privilege protected two magisterial district judges from being deposed on alleged defamatory comments made by a defendant where the subject matter of the alleged defamation had been judicial conduct, the Leber court noted that the deliberative process privilege would not apply in the following

circumstance:

> We distinguish such a situation from an instance where the testimony of a judicial officer is sought regarding a matter in which he or she merely happened to witness or was personally involved in a circumstance that later becomes the focus of a legal proceeding, and this matter does not involve his or her judicial decision-making. In this scenario, such testimony would not implicate the judicial officer's thought processes in his or her professional capacity.

Leber, 928 A.2d at 270 n.2. Despite Plaintiffs' argument that any alleged statements by Defendant Reinhart were "public comments" that Judge Scott "merely witnessed," we agree with Judge Scott that these comments were made during the search warrant application process, a judicial function. Officer Esterly and Defendant Reinhart, acting in their official capacities, presented information to Judge Scott in order to obtain a search warrant. Judge Scott was, therefore, acting in his judicial capacity at that time. In the Amended Complaint, Plaintiffs aver that Judge Scott, after overhearing Defendant Reinhart's alleged comments, denied the warrant application. Am. Compl., ¶ 75. Thus, Plaintiffs seek to question Judge Scott concerning matters that occurred not only in his judicial capacity but also purportedly involved his mental processes. As noted in Leber, judges are immune from testifying "as to information surrounding their conduct during an official proceeding." 928 A.2d at 270.

In an effort to make questioning of Judge Scott seem benign, Plaintiffs proposed and agreed to conduct the deposition by written interrogatories at a location and time convenient to Judge Scott. Plaintiffs also agreed to limit the number of interrogatories to a mutually agreeable amount. Although Judge Scott acknowledges that this would initially restrict potential areas of questioning, he argues that the inquiries may not end with Plaintiffs' interrogatories.

Instead, he may be subject to additional questioning by Defendants' counsel and may even be called by either party to testify at trial.

Plaintiffs contend in their Brief in Support of the Response to the Motion to Quash that "[a]t this stage of the case, upon information and belief, Magisterial District Judge is the only person[] able to accurately relay the admission made by Brad Reinhart that he 'can't wait to get back at that bitch.'" Br. in Supp. Resp., p.5. Plaintiffs opine that Defendant Reinhart is not likely to confirm his prior admission. Despite Plaintiffs' contention, Defendants properly note that the facts and any comments made by Defendant Reinhart are discoverable through other witnesses, such as Defendant Reinhart himself and Mr. Esterly, who, at the time the Motion to Quash was filed, were not yet deposed. In addition, Plaintiffs' counsel conceded at the September 30, 2009 hearing that Plaintiffs have information through a confidential source that the alleged statement was made by Defendant Reinhart to Mr. Esterly. Thus, an alternative source who can confirm that the alleged statement was made is available to Plaintiffs, in further contravention of Plaintiffs' earlier argument that Judge Scott is the only viable source to confirm the alleged admission by Defendant Reinhart.

On October 12, 2009, Plaintiffs submitted a Supplemental Response to the Motion to Quash and For Protective Order. In the Supplemental Response, Plaintiffs note that an article entitled "Suit Against Reading Codes Inspector Seeks Statement From District Judge" was published that same date in the local newspaper, The Reading Eagle about the instant case. Plaintiffs contend that Judge Scott, "by giving an on-the-record interview to the Reading Eagle on matters previously claimed to be privileged," waived any right to assert the deliberative process privilege concerning matters involving alleged statements by Defendant Reinhart. In

11

support of this alleged waiver of privilege, Plaintiffs cite cases involving waiver of privileges by disclosure of communications to third parties and waiver of executive privilege by individuals making disclosures to newspapers. Pls.' Supp. Resp., pp. 3-4 (citing <u>Nationwide Mut. Life Ins. Co. v. Fleming</u>, 924 A.2d 1259 (Pa. Super. 2007)(discussing attorney-client privilege with respect to documents and concluding that subject matter waiver of attorney-client privilege cannot be based on the disclosure of non-privileged documents); <u>Harris v. City of Philadelphia</u>, No. CIV.A. 82-1847, 1995 WL 350296, at *11 (E.D. Pa. June 6, 1995)(finding documents not protected by deliberative process privilege although stating that "the holder of the privilege . . . can waive it by permitting a breach of the privilege in his presence"); <u>Clark v. Township of Falls</u>, 13 F. R.D. 91 (E.D. Pa. 1988)(finding township waived executive privilege by disclosing a report to a newspaper and allowing magisterial justice to read report).

> The AOPC states, without citation to legal authority, that:
>
> The prohibition against examining a judge's mental process and actions taken in a judicial capacity is not akin to privilege, such as the attorney-client privilege, that can be waived due to disclosure by a third party. To the contrary, the prohibition is for the benefit of the court system as a whole. The goal of protecting the judiciary from attacks upon its integrity - including the time consumed sitting for a deposition and otherwise being subjected to discovery - remains regardless of whether a judge reveals something concerning a matter that occurred during a judicial proceeding.

Resp. to Supp. Resp., p. 2. The AOPC also argues that "assuming for the sake of argument that Judge Scott waived the deliberative process privilege, the privilege was not the only basis for the Motion to Quash." <u>Id.</u> at 1. The AOPC notes that courts examining the issue of compelling a judge to testify have looked to the availability of other sources for the sought-after evidence. <u>Id.</u>

at 2 (citing United States v. Roth, 332 F.Supp.2d 565, 568 (S.D.N.Y. 2004)(holding that even if a judge's proposed factual testimony was highly pertinent, other witnesses were available to testify to the proposed fact testimony); United States v. Anderson, 560 F.3d 275, 282-83 (5th Cir. 2009); and Auguste v. Sullivan, No. CIV.A. 03-cv-02256-PAB-KLM, 2009 WL 790135, at *1 (D. Col. 2009)(holding testimony regarding the practice of affiants applying for search warrants could be obtained from sources other than a judge)).  The AOPC reiterates its earlier argument that there are other sources available to Plaintiffs from whom Plaintiffs can obtain evidence regarding Defendant Reinhart's alleged statements about Mrs. Ciarlone and the search warrant, including testimony from Mr. Esterly, Defendant Reinhart and Plaintiffs' unidentified confidential source with knowledge of the alleged comments.  Alternatively, the AOPC argues that because discovery has not been completed, the Court may defer ruling upon the Motion to Quash and For Protective Order pending further depositions.  If another witness testifies to comments allegedly made by Defendant Reinhart about Mrs. Ciarlone, the AOPC argues that there would be no need to take Judge Scott's deposition.

      In the absence of any Third Circuit precedent on this issue cited by Plaintiffs or the AOPC, this Court finds the reasoning in United States v. Roth persuasive.  In Roth, a case from the United States District Court for the Southern District of New York, defendants in a criminal case issued a subpoena to the state trial judge who accepted their reduced plea in a related case seeking his testimony as a fact witness and regarding his mental processes in accepting the plea.  Upon the state attorney's motion to quash the subpoena, the court held, in part, that the judge's testimony as a fact witness would not be compelled due to its limited pertinency and availability of similar testimony from other sources.  332 F.Supp.2d at 569-70.

The Roth court looked to the reasoning of the Seventh Circuit in United States v. Frankenthal, 582 F.2d 1102 (7th Cir. 1978), where the introduction of judicial testimony was permitted because the judge "possessed factual knowledge that was highly pertinent to the jury's task, and he was the only possible source of testimony on that knowledge" although the judge's testimony was limited to "brief, strictly factual testimony." Id. at 1108.  The Roth court found that the logic of Frankenthal was persuasive and, in the absence of controlling Second Circuit precedent, the court adopted the Seventh Circuit's reasoning. Roth, 332 F.Supp.2d at 568.  The court found that a judge may only be required to testify if he: (1) possesses factual knowledge, (2) that knowledge is highly pertinent to the jury's task, and (3) is the only possible source of testimony on the relevant factual information. Id.  We next apply the Frankenthal test to the case at bar.

      Considering Judge Scott's statement to The Reading Eagle, there is no question that Judge Scott has knowledge about statements made by Defendant Reinhart.  Moreover, Judge Scott's knowledge of Defendant Reinhart's statement is highly pertinent to the jury's task in this Section 1983 case.  Judge Scott is not, however, the only possible source of testimony regarding Defendant Reinhart's statement.  The facts and any comments made by Defendant Reinhart are discoverable through other witnesses, such as Defendant Reinhart and Mr. Esterly, who have not been deposed.  In addition, Plaintiffs' counsel conceded at the September 30, 2009 hearing that they have information through a confidential source confirming Defendant Reinhart's statement to Mr. Esterly.  Accordingly, this Court finds that the third Frankenthal prong is not met because Judge Scott is not the only possible source of testimony.  Based on the information available at this time, the Motion to Quash and For Protective Order will be granted.

      An order will issue shielding Judge Scott from the instant subpoena.