IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY ANN CIARLONE, et al. | : | Civil Case |
|     Plaintiffs, | : | |
| | : | |
| v. | : | No. 09-310 |
| | : | |
| CITY OF READING, et al. | : | |
|     Defendants, | : | |

## MEMORANDUM

**Stengel, J.**                                                                                                                                                 November 18, 2009

In this § 1983 civil rights case, plaintiffs allege defendants violated their constitutional rights when the defendants searched a property at 513 Oley Street, Reading Pennsylvania. Mary Ann Ciarlone owned the building. Irene Lora, Orazio Gerbino, and Anne Baez each rented apartments at the location from Ms. Ciarlone. Defendants failed to provide notice to the tenants prior to this administrative search, and used a sledge hammer in execution of a search warrant.

The defendants City of Reading, Reading Mayor Thomas McMahon, Reading Managing Director Ryan Hottenstine, Code Enforcement Administrator Brad Reinhart, former Manager of Building Trades and Zoning Jatinder Khokhar, and Code Enforcement Officer James Orr have filed a motion to dismiss the amended complaint (Document #12). For the reasons set forth below, I will deny the motion.

I. **BACKGROUND**

Ms. Ciarlone owns[1] a row house at 513 Oley Street which is divided into three units occupied by tenant-plaintiffs Ms. Lora, Mr. Gerbino and Ms. Baez. Ms. Ciarlone owns another rental unit (in which she lives) on North Fifth Street in the upscale Central Park area of north Reading. Ms. Ciarlone is active in several civic associations in the City, including the Real Estate Investors Association, the Central Park Historic District and the City of Reading Historic and Architectural Review Board. First Amended Complaint ¶ 45. She attends City Council meetings and hearings on a regular basis and sometimes expresses opinions critical of the City. Id. at ¶¶ 46-47. She has repeatedly spoken out against policies and personnel in the City's Office of Code Services.

On November 5, 2007, Ms. Ciarlone spoke at a City Council meeting in support of Wade and Tina Fuhrman, a couple who filed a lawsuit against the city alleging the Office of Code Services had unlawfully inspected their home. Id. at ¶ 50.

In December 2007, Ms. Ciarlone filed a complaint against defendant Jatinder Khokhar, Manager of Building Trades and Zoning, charging him with violating an ordinance that required him to be a city resident to hold his position. Id. at ¶¶ 52-55. Mr. Khokhar was suspended and fined by the Charter Review Board, but the Office of Code Services changed his title and allowed him to continue his position.

---

[1] Ms. Ciarlone also owns residential rental properties in Reading at (1) 709 North Fifth Street; (2) 818 North Third Street; and (3) 704 North Fifth Street. First Amended Complaint ¶ 44. Defendants state the house at 513 Oley Street is also owned by Ms. Ciarlone's husband, but he is not a plaintiff in this suit.

On March 12, 2007, the Office of Code Services mailed a Notice of Inspection to Ms. Ciarlone for the property at 709 North Fifth Street. Id. at ¶¶ 60-61. On April 2, 2007 - the day scheduled for the inspection - Ms. Ciarlone met Code Enforcement Officer Joseph Esterly outside the building and instructed him to get a search warrant for the property. Id. at ¶¶ 63, 66. Although he appeared before two magistrate judges, Officer Esterly was unable to obtain a warrant. Id. at ¶¶ 71-75. The 709 North Fifth Street property was never searched.

On September 24, 2008, the Office of Code Services informed Ms. Ciarlone that a property inspection was scheduled for the 511 Oley Street property[2] on October 7, 2008. The City did not provide notice of the inspection to any of the tenants who lived in that building. Id. at ¶ 78. When Code Enforcement Officer James Ott arrived on October 7, 2008, Ms. Ciarlone did not permit him access. Id. at ¶ 80.

On October 9, 2008, Officer Ott obtained a warrant to search the property. Id. at ¶ 89. The next day, Officer Ott and Mr. Reinhart, arrived at the property and found the exterior door locked. Id. at ¶92. When Ms. Ciarlone refused to participate in the search, Mr. Reinhart struck the front door with a sledgehammer seven times to break it open, but had no success. Id. at ¶¶ 92-93. He then broke the glass out of the door and unlocked the door from the inside. Id. at ¶ 94. Mr. Reinhart knocked on each of the three interior doors to the tenants' apartments. Id. at ¶ 96. When no one answered, Mr. Reinhart used

---

[2] The First Amended Complaint does not indicate whether the notice was mailed or provided some other way. It states only that Ms. Ciarlone was "informed." Id. at ¶ 76.

his sledgehammer to break down each apartment door. Id. at ¶ 97. The occupants of those apartments were not home. Id. at ¶ 98. After the inspection, the officials left without leaving notice to the tenants that they had searched their apartments.[3] Id. at ¶ 101. They did, however, issue a "Notice of Violation" to Ms. Ciarlone requiring her to repair the doors and windows they had broken. Id. at ¶100.

On October 11, 2008, the day after the doors of Ms. Ciarlone's property were broken down, City Councilman Stephen Fuhs came to view the damage and to apologize for the extensive destruction and for the Office of Code Services' actions. Id. at ¶¶ 134-135. Six days later, Reading City Council passed a resolution directing the Codes Department not to undertake forced entry into private properties. Id. at 136.

## II. DISCUSSION

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all

---

[3] When the tenants arrived home and saw their destroyed doors, they each believed they had been the victims of a burglary. First Amended Complaint at ¶¶ 111, 121, 130. Each tenant was emotionally distressed and feared for their safety. Id. at ¶¶ 112, 122, 131.

reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

### A. Counts I and III – Constitutionality of the Search

Count I of plaintiff's complaint concerns the October 10, 2008 inspection and search of 510 Oley Street, and claims the failure of the defendants to obtain the consent of the tenant plaintiffs and the use of the sledge hammer violated the Fourth Amendment.[4]

---

[4] The City of Reading Property Maintenance Code states "[p]roperties covered under this Code shall be inspected routinely when possible every three (3) years or as part of a planned

5

First Amended Complaint at ¶¶ 137-167. Count III alleges a violation of the tenant plaintiff's right to privacy because they were not provided with notice of the inspection, did not authorize Ms. Ciarlone to grant access to their homes, were denied the opportunity to allow entry to their homes, and were denied the opportunity to remove personal objects from the plain view of the "inspection." Id. at ¶¶ 197-204.

Defendants maintain the warrant[5] was supported by probable cause, the execution of the search warrant was reasonable, and there is no proof of damage to the property.

---

inspection being conducted pursuant to a systematic or concentrated code enforcement program in that portion of the city." See Defendant's Memorandum at Exh. B, at 6, Ciarlone v. City of Reading, No. 09-310 (E.D. Pa. filed Apr. 7, 2009). If an "owner, occupant or other person in charge of a structure . . . refuses, impedes, inhibits, interferes with, restrict, or obstructs entry and free access to every part of the structure or premises where inspection authorized by this Code is sought, the administrative authority shall promptly apply for a search or inspection warrant." Id. at 7.

Similarly, the City of Reading Housing-Rental Ordinance provides "[a]n inspection of the dwelling unit or rooming uni shall be performed every three (3) years." See Defendant's Memorandum at Exh. C, at 10. The Ordinance allows the administrative authority to apply for a search warrant if the "owner, occupant or other person in charge of a structure . . . refuses, impedes, inhibits, interferes with, restrict or obstructs entry and free access to every part of the structure or premises." Id. at 12.

[5] The warrant described the premises to be searched as "the entire premises, residence(s), premises, structure and units of 511 Oley Street, Reading, County of Berks, Pennsylvania . . . ." Defendant's Memorandum at Exh. A. The warrant lists the owner, occupant, or possessor of the premise to include Craig A. and Mary Ann Ciarlone, and O. Gerbino, I. Lora, A. Baez, and or John Doe 1, John Doe 2, Jane Doe 1 and/or Jane Doe 2.

The affidavit identifies the property, acknowledges rental permits had been obtained, and explains 511 Oley Street had not been inspected since October 12, 1999. Id. The Affidavit notes the property is due for inspection pursuant to the Property Maintenance Code and the Housing-Rental Ordinance. Id. The Affidavit notes Ms. Ciarlone refused to allow Defendant Orrs to perform an inspection. Id. The Affidavit then outlined the requirements for reasonable cause pursuant the Property Maintenance Code and the Housing-Rental Ordinance.

Defendants allege tenant plaintiffs' privacy claim should be dismissed because it is no different from the Fourth Amendment claim.

To state a section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Amendment "safeguard[s] the privacy and security of individuals against arbitrary invasions by government officials." Camara v. Municipal Court of City and County of San Francisco, 387 U.S. 523, 528 (1967) (quoting Wolf v. People of State of Colorado, 338 U.S. 25, 27 (1949)). The Fourth Amendment is enforceable against the states through the Fourteenth Amendment. Id. (citing Ker v. State of California, 374 U.S. 23, 30 (1963)).

A "search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." Id. In Camara, the United States Supreme Court held "administrative searches . . . are significant intrusions upon the

7

interests protected by the Fourth Amendment, . . . such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual." Camara, 387 U.S. at 534. Probable cause to issue a warrant exists "if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling." Id. at 538. Standards for conducting such searches "will vary with the municipal program being enforced, [and] may be based upon the passage of time, the nature of the building (e.g., a multifamily apartment house), or the condition of the entire area." Id. at 538. A warrant procedure guarantees "a decision to search private property is justified by a reasonable governmental interest." Id. at 539. Reasonableness is the "ultimate standard." Id. The Camara court noted "warrants should normally be sought only after entry is refused." Id. at 539.[6]

    1.    Notice

Tenant plaintiffs allege defendants lacked probable cause for a search warrant because defendants failed to inform the magistrate judge that tenant plaintiffs had not been informed of the inspection. See First Amended Complaint at ¶¶ 153-159; Plaintiffs Response at 26-29.

Tenants have a reasonable expectation of privacy in their rental units, see

---

[6] The Camara court also noted the inspectors had entered the building with the landlord's consent, but the government did not contend the landlord's consent was sufficient to authorize the inspection of the tenant's premise. Camara, 387 U.S. at 539.

Chapman v. United States, 365 U.S. 610, 617-18 (1961), and a right to quiet enjoyment of their rental property, see 68 Pa. Cons. Stat. § 250.504-A. Moreover, under Pennsylvania law, a tenant has the sole and exclusive possession of the leased portion of the property. Bleam v. Gateway Professional Ctr. Assoc., 636 A.2d 172, 175 (Pa. Super. Ct. 1994); Kobylinski v. Schmidt, 519 A.2d 488, 491 (Pa. Super. Ct. 1986) (citing Pierce v. Phila. Housing Auth., 486 A.2d 1004, 1005 (1995)). A landlord cannot consent to a search of a leased premises. See Chapman, 365 U.S. at 617-18 (search unlawful where police had consent of landlord but not tenant).

An affidavit of probable cause in support of a search warrant is entitled to a presumption of validity. Franks v. Delaware, 438 U.S. 154, 171 (1978). This presumption, however, is rebuttable. Sherwood v. Mulvhill, 113 F.3d 396, 399 (3d Cir. 1997). To rebut the presumption of validity, the plaintiff must show: (1) the affiant "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant," and (2) "such statements or omissions are material, or necessary, to the finding of probable cause." Sherwood, 113 F.3d at 399. An omission is recklessly made if "any reasonable person would have known" the judge would want to know the fact withheld. Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000). A false statement or omission is material to a probable cause determination if the affidavit is insufficient to establish probable cause absent the false or omitted information. Sherwood, 113 F.3d at 399-400.

9

Tenant plaintiffs allege sufficient facts to support their Section 1983 claim based on a violation of their right to privacy and their Fourth Amendment rights. Tenant plaintiffs had a reasonable expectation of privacy in their leased premises and had exclusive possession of the leased premises. Defendants failed to provide notice of the planned inspection prior to obtaining a search warrant. The tenants were unaware of the proposed inspection and did not refuse entry. Although Camara stated an administrative search warrant could exist where based on standards to conduct investigations are satisfied, Camara, 387 U.S. at 538, it also noted the search warrant usually should not be issued without a prior refusal of entry, id. at 539.

In addition, plaintiffs allege sufficient facts to support their claim the warrant was not based on probable cause. The defendants failed to inform the magistrate judge the tenant plaintiffs had not been provided notice, which plaintiffs claim was a material omission, negating the finding of probable cause. See Wilson, 212 F.3d at 786.

Although the parties dispute whether notice was required pursuant to the Housing Rental Ordinance,[7] tenant plaintiffs can maintain the action to allow for the possible

---

[7] The Housing Rental Ordinance has two sections describing the notice required. Section 11-119 provides:

> All official notices shall be by first class mail to address of record of the owner and local responsible agent and posting of the dwelling unit or rooming unit.

Section 11-109(F) provides:

constitutional challenge to the ordinance.

## 2. Use of a Sledge Hammer

Plaintiffs allege the use of a sledge hammer to gain access to the building and the interior units was unreasonable.

The Fourth Amendment's "general touchstone of reasonableness . . . governs the method of execution of the warrant." United States v. Ramirez, 523 U.S. 65, 71 (1998). "Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though entry itself is lawful." Ramirez, 533 U.S. at 71.

Plaintiffs allege the officials used a sledge hammer to gain access into the exterior door and the interior doors. The officials failed to notify the tenants of the search, thereby depriving the tenants of the ability to unlock their door for the officials. The plaintiffs allege the choice to use a sledge hammer rather than less destructive means (e.g., a lock smith) was unreasonable.

Plaintiffs allege sufficient facts to maintain their Fourth Amendment violation based on the excessive use of force to conduct an administrative search on a residential property. Their claim sufficiently states the required elements of the claim and certainly does "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting

---

    All notices scheduling an inspection shall be mailed via regular mail to the owner of record with a copy mailed via regular mail to the local responsible agent.

Twombly, 550 U.S. at 556).

### B. Count II -- Failure to Educate and Train

Defendants maintain plaintiffs' failure to educate and train claim against defendants McMahon, Khokhar, Reinhart, and Churchill must be dismissed because plaintiffs failed to prove a Constitutional deprivation. Defendants' Memorandum at 23 (citing Gardner v. Luzerne County, No. 07-1947 (M.D. Pa. 2009)).

As discussed above, plaintiffs sufficiently pled a constitutional claim to survive a motion to dismiss. See Part II.A. Therefore, I will deny defendants' motion to dismiss this claim.

### C. Count IV -- Due Process Claim

"The touchstone of due process is the protection of the individual against arbitrary action of government." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)). A violation of substantive due process occurs where executive action is "arbitrary, or conscience shocking, in a constitutional sense." County of Sacramento, 523 U.S. at 847 (quoting Collins v. Harker Heights, 503 U.S.115, 128 (1992)).

"[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that

Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." County of Sacramento, 523 U.S. at 842 (quoting Graham v. Connor, 490 U.S. 386, 395(1989)). Therefore, if a specific Amendment covers a plaintiff's due process claim, "the claim must be analyzed under the standard appropriate for that specific provision, not under the rubric of substantive due process." County of Sacramento, 523 U.S. at 843 (quoting United Stats v. Lanier, 520 U.S. 259, 279 n.7 (1997)).

Plaintiffs' due process claim is not based on the unreasonableness of the search. Rather, plaintiffs' due process claim is based on the arbitrary action of government officials in selecting Ms. Ciarlone's house to search and the arbitrary action of the use of a sledge hammer to execute a search warrant on only Ms. Ciarlone's property. First Amended Complaint at ¶¶ 206-17. Accordingly, I will deny defendants' motion to dismiss plaintiffs' due process claim because the claim is not covered by the Fourth Amendment, and, therefore, should be analyzed under the Substantive Due Process standard. See County of Sacramento, 523 U.S. at 843.

### D.  Count V – Malicious Prosecution

Plaintiffs have withdrawn Count V of the First Amended Complaint, which alleged malicious prosecution.

### E. Count VI -- First Amendment Retaliation

To plead a First Amendment Retaliation claim, the plaintiff must allege: (1) constitutionally protected conduct; (2) retaliatory conduct sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Thomas v. Indpendence Twp., 463 F.3d 285, 296 (3d Cir. 2006). "The key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" Id. at 296 (quoting McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006)).

Defendants do not dispute that Ms. Ciarlone's conduct, including her involvement in various civic associations in Reading, her expression of opinions adverse to the city, her support of a couple alleging the city unlawfully inspected their home, and her complaint against Mr. Khokar challenging his status as a citizen of Reading, was constitutionally protected. See Defendants' Memorandum at 21. Rather, defendants maintain Ms. Ciarlone's complaint is based on conclusory allegations, and she fails to identify specific retaliatory action on the part of each defendant. See Defendants' Memorandum at 21.

Ms. Ciarlone alleges defendants "participated in, acquiesced to, or otherwise consented to the October 10, 2008 search," and such action was retaliatory and was "an

14

attempt to chill [Ms.] Ciarlone's inclination to act as a public advocate and concerned resident of the City of Reading." Compl. at ¶¶ 232-42. Moreover, Ms. Ciarlone alleges, during a failed attempt to obtain an administrative search warrant in March 2007, defendant Reinhart stated "I can't wait to get back at that b****," referring to Ms. Ciarlone. Compl. ¶ 75. She also alleged the defendants' use of a sledge hammer to execute an administrative search warrant on a residential property establishes retaliatory conduct.

The complaint alleged retaliatory conduct that would deter a reasonable person from engaging in protected conduct and a causal link between her protected activity and the retaliatory conduct sufficient to suggest the elements of the First Amendment claim and raise "a reasonable expectation" discovery will reveal evidence to support the claim.

Accordingly, I will deny the motion to dismiss the First Amendment claim.

### F. Qualified Immunity

Qualified Immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Courts apply a two-step inquiry to determine whether a defendant is entitled to qualified immunity. First, a court must determine whether a constitutional right was violated. Second, a court must determine

whether the right was clearly established such that a reasonable officer would have known the conduct was unlawful. Saucier v. Katz, 533 U.S. 194, 201-02 (2001).

As discussed above, plaintiffs allege sufficient facts to survive a motion to dismiss their constitutional claims. Plaintiffs' complaint also alleges sufficient facts to survive a motion to dismiss on the issue whether the constitutional right was clearly established. Therefore, I will deny the motion to dismiss on qualified immunity grounds at this stage.

**G. Claims Against Defendants McMahon, Hottenstein, and Reinhart**

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 52, 537 n.3 (1981)). A plaintiff can establish personal involvement "through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. A supervisor "may be held liable under § 1983 for constitutional violations of their subordinates if it is shown that they, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which direclty caused [the] constitutional harm.'" Njie v. DeRose, 2009 WL 3199699, at *2 (M.D. Pa. Sept. 28, 2009) (quoting Tsakonas v. Cicchi, 308 Fed. Appx. 628, 632 (3d Cir. 2009)).

I will deny defendants' motion to dismiss the claims against defendants McMahon, Hottenstein, and Reinhart. Plaintiffs allege the complaints by Ms. Ciarlone and other

16

landlords against City and the Code Administration's policies were known by the defendants. They allege the City of Reading's policy, since the start of Mayor McMahon's term as mayor, has been "to aggressively enforce its Property Maintenance Code without regard or sufficient regard to the Constitutional rights of landlords and tenants." Compl. at ¶ 181. Accepting all factual allegations in the complaint as true, plaintiffs' complaint sufficiently alleges the defendants' subordinates were acting pursuant to a policy created and established by defendants. Therefore, I find the complaint contains sufficient factual allegations to "raise a reasonable expectation that discovery will reveal evidence" the violations occurred at the "personal direction of," or with the "actual knowledge and acquiescence" of McMahon, Hottenstein, and Reinhart or that they "with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused [the] constitutional harm."

    An appropriate order follows.